THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAY PERRY, Defendant (Charles H. Delano, Contemnor-Appellant).

Fourth District   No. 4—90—0645

Opinion filed March 21, 1991.

Russell K. Benton, of Delano Law Offices, P.C., of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Contemnor-appellant, attorney Charles H. Delano, appeals the order of the trial court finding him in contempt for failing to comply with the trial court's order that he provide a list of witnesses that he might call on behalf of his client. The trial court entered this order shortly before jury selection in a misdemeanor case. Appellant argues that the trial court may not order a defendant in a misdemeanor case to provide a list of his potential witnesses. We affirm.

On July 6, 1990, appellant's client, Ray Perry, was charged with speeding and driving under the influence of alcohol. On August 22, 1990, appellant appeared as Perry's counsel when the case was called for trial. Prior to jury selection, a conference was conducted in chambers involving the trial judge, appellant, and the prosecutor. The judge asked the prosecutor for a list of his witnesses, and the prosecutor gave the trial court a list containing one name, a local police officer. The following discussion then took place:

"[THE COURT]: *** I have made a request for Mr. Delano to give me a list of witnesses so an inquiry can be made of the jurors as to any knowledge that they may have of any of the potential witnesses in this case.

Mr. Delano, you want to make a response?

MR. DELANO: Yes, your Honor. I respectfully object. The Court also advised me if I fail to do so—

THE COURT: Yeah, I'm going to get to that in a second, but go ahead.

MR. DELANO: That any of the jurors that were acquainted with any of the witnesses that we might call, that you were going to assess costs. I assume implicit in that was to discharge the jury?

THE COURT: I would declare a mistrial because Mr. Delano, we're talking about two separate things.

I understand that in a misdemeanor case, the Defendant does not have to supply a list of witnesses for discovery purposes. *This is not for discovery purposes. This list of witnesses is for an inquiry to be made into the jury as to whether or not they have any knowledge of any of the individuals that may come on and testify and to make a further inquiry as to what that knowledge may or may not be to see whether or not they're going to be able to be fair and impartial.*

If I do not have that list of witnesses for the purposes of making the inquiry into the jury and if we would in fact select a jury in this case and I would later find out that one or more of those jurors has some kind of connection with the individual which may affect their ability to be fair and impartial, I'm going to declare a mistrial, I'm going to discharge the jury, and I'm going to assess costs against either you or your client, because you're talking about two separate things.

MR. DELANO: Your Honor, with all due respect to the Court, however the Court wants to—whatever name you want to call it by, it serves the discovery purpose to the State, and it

serves the discovery purpose of the State when the case was called for trial at 9 o'clock this morning. It is now ten minutes 'til 11. We've been waiting to go to trial. We are now advised that there won't even be jury 'til 1:30, and it serves that purpose for the State, and the Schmidt case points out we're under no obligation for discovery purposes.

THE COURT: I understand, but I want to be very clear on this, Mr. Delano. I understand what you're saying. \*\*\*

\* \* \*

MR. DELANO: Your Honor, fault is somewhat immaterial, and I would appreciate the accommodation of the Court until the starting time. However, I would anticipate that this case will go well into tomorrow, which also gives them full opportunity of discovery during that period.

In addition to that, it also does something else that should only be done with statutory authority, and that is, it limits the defense to the evidence that they may present in the course of the trial.

\* \* \*

So, I would respectfully object to the Court's rulings.

THE COURT: Okay. Your objection is on the record. You may have an opportunity to take it up on appeal because the Court's ruling is going to remain in effect." (Emphasis added.)

The court then discussed other matters with counsel not relevant to this appeal and recessed until the afternoon. At 1:30 p.m. on the same day, the conference in chambers was reconvened. The same parties were present and the following was stated:

"THE COURT: \*\*\* Let me indicate for the record that I have pulled, and I had previously read the *Williams* case, which is 87 Illinois 2d 161[,] which came out of the Fourth District and actually involved a case out of Sangamon County, and in my reading of the Supreme Court decision, and I don't think that either of the parties disagree with the reading, it would appear that at least the way the Court interpreted this matter coming up was by virtue of a discovery order that was entered against the Defendant in a misdemeanor case, it was basically two traffic citations.

The—I do not—I did not think that applies, nor do I think it applies to this particular situation when we are talking about discovery several minutes before we commence the selection of a jury where we're trying to ascertain what knowledge the jurors may have of any of the potential witnesses that may be

brought in to testify either on behalf of the State or on the Defendant, and to ascertain if they are going to be affected in any manner by the testimony of any of those individuals so that both sides can, in fact, obtain 12 fair and impartial jurors in a case.

* * *

THE COURT: Okay. All right. Now, Mr. Delano, for the record, let me ask you: Are you willing to furnish the Court a list of potential witnesses so the Court can make an inquiry of the jury for voir dire selection?

MR. DELANO: I most respectfully decline, your Honor, for the reasons I have set forth this morning.

THE COURT: Okay. The Court will find you in contempt of Court and assess a penalty of $10."

Before this court, appellant continues to argue that the trial court does not have the authority to order him to reveal the list of witnesses he may call because that order is equivalent to a discovery order. Appellant correctly points out that the scope of the supreme court rules on discovery is limited to felony cases (134 Ill. 2d Rules 411 through 415; see also *People v. Schmidt* (1974), 56 Ill. 2d 572, 309 N.E.2d 557; *People v. Williams* (1981), 87 Ill. 2d 161, 429 N.E.2d 487).

Appellant further argues that because a trial court order directing a litigant to disclose his potential witnesses has the same legal effect as a discovery order, the court does not have the discretionary authority to enter such an order because discovery matters should not be left to the discretion of the individual trial courts.

In the context of this case, we find both of appellant's arguments to be totally groundless.

In *Mau v. North American Asbestos Corp.* (1987), 156 Ill. App. 3d 926, 509 N.E.2d 1112, this court was confronted with the identical question presented by this case but in a civil law context. In *Mau*, just prior to the commencement of *voir dire*, the court ordered the attorneys to submit lists of witnesses, and plaintiff's counsel refused to do so. (*Mau*, 156 Ill. App. 3d at 927, 509 N.E.2d at 1113.) Citing section 2—1003(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1003(c)), which deals with discovery and provides that "[a] party shall not be required to furnish the names or addresses of his or her witnesses," plaintiff's counsel contended that the court had no authority to require plaintiff to furnish such a list. (*Mau*, 156 Ill. App. 3d at 927, 509 N.E.2d at 1113.) The trial court rejected that argument and found plaintiff's counsel to be in contempt. (*Mau*, 156 Ill.

App. 3d at 927, 509 N.E.2d at 1113.) This court affirmed and stated the following:

"We have reviewed the parties' contentions together with the record and the authority cited and conclude that section 2—1003(c) does not apply to this situation. Contrary to [appellant's] assertions, section 2—1003 pertains only to discovery and deposition. Further, the decisions cited by [appellant] in support of his position involved cases in the discovery stage. Here, however, the case was no longer in the discovery stage; rather, it had been called for trial. Thus, section 2—1003(c) does not govern the situation here.

\* \* \*

We cannot say that the court abused its discretion by requesting a list of witnesses to aid in the selection of an impartial jury and for the effective management of the litigation." *Mau*, 156 Ill. App. 3d at 929, 509 N.E.2d at 1114.

■ We find support for our conclusion in this case in *People v. Porter* (1986), 111 Ill. 2d 386, 489 N.E.2d 1329, wherein the supreme court wrote the following:

"Our Rule 234 (87 Ill. 2d R. 234), made applicable to criminal cases by Rule 431 (87 Ill. 2d R. 431), provides in pertinent part:

'The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper.'

Thus, the manner and scope of the *voir dire* examination is left to the discretion of the trial court." (*Porter*, 111 Ill. 2d at 401, 489 N.E.2d at 1335.)

Clearly, the trial court in the present case did not abuse its discretion when it required the parties to furnish it with lists of witnesses they intended to call so that the court could inquire on *voir dire* examination whether a prospective juror was acquainted with any such prospective witness.

■ Further support for this view is found in *People v. Chamness* (1984), 129 Ill. App. 3d 871, 473 N.E.2d 476, where the court wrote the following:

"The purpose of *voir dire* is to assure the selection of an impartial jury. [Citations.] Under Supreme Court Rule 234 (87 Ill.

2d R. 234), circuit courts are granted broad discretion in conducting and managing *voir dire* [citations], and the decision whether to ask certain questions of prospective jurors is within this discretion [citation]." *Chamness*, 129 Ill. App. 3d at 873, 473 N.E.2d at 478.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.